UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

CHERYL GOODWIN,

                              Plaintiff,

            - against -

ORANGE & ROCKLAND UTILITIES, INC.,
STEVEN MAINS, INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS and INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS LOCAL
503,

                              Defendants.

- - - - - - - - - - - - - - - - - - - X

**ECF CASE**

04 Civ. 0207 (WCC)

**OPINION
AND ORDER**

**A P P E A R A N C E S :**

                              PRICE, MEESE, SHULMAN & D'ARMINIO,
                                P.C.
                              **Attorneys for Plaintiff**
                              50 Tice Boulevard
                              Woodcliff Lake, New Jersey 07677

MATTHEW S. ROGERS, ESQ.

            Of Counsel

                              MARY SCHUETTE
                              CONSOLIDATED EDISON CO. OF NEW YORK
                                INC.
                              **Attorneys for Defendant
                                Orange & Rockland Utilities, Inc.**
                              Four Irving Place, 1815-S
                              New York, New York  10003

DAVID J. REILLY, ESQ.
JONATHAN A. FIELDS, ESQ.

            Of Counsel

**A P P E A R A N C E S :**  (continued)

<div style="margin-left: 50%;">

LAW OFFICES OF BERNARD WEINREB
**Attorneys for Defendant**
  **Steven Mains**
Two Executive Boulevard, Suite 201
Suffern, New York 10901

</div>

BERNARD WEINREB, ESQ.

     Of Counsel

**CONNER, Senior D.J.:**

Plaintiff Cheryl Goodwin brings this case against defendant Steven Mains and his employer, defendant Orange & Rockland Utilities, Inc. ("O&R"), alleging sexual harassment and retaliatory termination in violation of Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. EXEC. L. § 290 *et seq.* ("NYHRL").[1] Defendants have separately moved for summary judgment pursuant to FED. R. CIV. P. 56. For the reasons stated below, the motion of defendant Mains is granted in part and denied in part, and the motion of defendant O&R is denied in full.

## BACKGROUND

At all periods relevant to this action, plaintiff was an employee of National Field Services ("NFS"), an employment agency specializing in placing temporary personnel with telecommunications and utility companies. (Am. Complt. ¶ 3; Forman Dep. at 8.) In September 2001, NFS placed plaintiff with O&R, a utility company that supplies gas and electrical service to Rockland County, New York, as well as parts of New York's Orange and Sullivan Counties and parts of New Jersey and Pennsylvania. (Am. Complt. ¶¶ 2-3; Def. O&R Rule 56.1 Stmt. ¶ 1.) Plaintiff was assigned to O&R's Locating Department, part of O&R's Gas Operations Department responsible for locating and marking underground electric and gas lines at the request of excavators,

---

[1] The parties stipulated to the dismissal with prejudice of defendant International Brotherhood of Electrical Workers Local 503 (the "Union") by Order of this Court dated July 6, 2005. Defendant International Brotherhood of Electrical Workers has not appeared in this action.

whether affiliated with O&R or not.[2]  (Def. O&R Rule 56.1 Stmt. ¶¶ 15-16; Kolvenbach Decl. ¶¶ 6, 8.)  Plaintiff's responsibilities included dispatching locators, informing excavators of the work performed, responding to customer inquiries and filing related paperwork.  (Def. O&R Rule 56.1 Stmt. ¶¶ 17-21.)  Plaintiff was supervised by both Mains and Aileen Kolvenbach. (Am. Complt. ¶ 5; Goodwin Dep. at 10.)

Plaintiff's Complaint alleges she was "subjected to explicit and offensive language" by Mains throughout the course of her employment at O&R.  (Am. Complt. ¶ 9.)  Specifically, plaintiff claims that Mains frequently sang a song with the lyrics "Venus, why don't you touch my penis?" (Goodwin Dep. at 13-14.)  Mains denies singing this song more than twice during the year of plaintiff's employment.  (Mains Dep. at 63.)

Plaintiff's Complaint also alleges that Mains "made inappropriate sexual comments regarding Plaintiff's clothing."  (Am. Complt. ¶ 10.)  According to Goodwin's testimony, this consisted of a single comment by Mains regarding the tightness of her jeans, (Goodwin Dep. at 69), which Mains denies.  (Mains Aff. ¶¶ 3, 4.)

The Complaint further alleges that, in July 2002, Mains "impermissibly touched Plaintiff by snapping her bra without her consent," and that Mains later admitted and apologized for his alleged action.  (Am. Complt. ¶¶ 11, 16.)  According to plaintiff, this incident occurred while she was pouring herself a cup of coffee, and that Kolvenbach witnessed it but neither said nor did anything in response.  (Goodwin Dep. at 20.)  Mains denies this ever happened.  (Mains Aff. ¶ 5; Mains Dep.

---

[2] Prior to commencing any excavation work, utility personnel, private contractors and property owners are required by law to notify the proper New York, New Jersey or Pennsylvania "One Call" Center, which coordinates the identification and marking of underground utility facilities. (Def. O&R Rule 56.1 Stmt. ¶ 17.)

at 62; Farley Decl. ¶ 8.) Kolvenbach testified that she had no direct knowledge of the incident. (Kolvenbach Dep. at 33.)

Plaintiff also claims that within her first several weeks at O&R, Mains approached her, the zipper of his pants down and his finger emerging through the fly, saying "welcome to the men's club." (Goodwin Dep. at 18.) This comment, made in front of at least one other male employee, "appalled" plaintiff. (*Id.* at 19.) Mains denies ever having made any such gesture toward Goodwin, though he could not discount the possibility that he had done so in front of male employees, and claims it was Goodwin who made the "men's club" comment. (Mains Dep. at 63-64.)

The Complaint also alleges—and defendant acknowledges—that in August 2002, when Goodwin informed Mains that she was stepping outside to smoke a cigarette, he replied with a comment suggesting oral sex.[3] (Am. Complt. ¶ 13.) Goodwin stated she was "appalled" and ran out of the office, though she returned to her desk after smoking her cigarette and resumed her work; she alleges she immediately informed Kolvenbach. (Goodwin Dep. 24, 26.) Mains asserts that he thought Goodwin was out of earshot when he made the comment, and, when he realized otherwise, immediately ran outside after Goodwin and made an apology for the comment, which she allegedly accepted. (Mains Aff. ¶ 6; Mains Dep. at 6, 29.)

Plaintiff stated that this last interaction changed the relationship. (Goodwin Dep. at 25-26, 32.) Mains agreed that relations between the two were "cold" after this incident. (Mains Dep. at 73.) Kolvenbach testified it was the reporting of the incident to O&R's Ethics Department, as opposed

---

[3] Goodwin testified Mains' commented to the effect "when you come back in why don't you give me a blow job." (Goodwin Dep. at 21-22.) Mains' testified he believed the exact quote was "When you come back, I could use a blow job." (Mains Dep. at 6.) The parties dispute whether this comment was made with the intent that Goodwin hear it. (*Id.*; Goodwin Dep. at 74-75.)

to the incident itself, that caused the strain in the relationship. (Kolvenbach Dep. at 42 ("It was the fact her [*sic*] being uncomfortable because her and Steve were friends and I pretty much threw a wrench in it. . . . She was only upset that I reported it. . . . She was not upset about the comment.").) According to Kolvenbach, plaintiff asked Kolvenbach not to report the incident, but her obligations as a supervisor required her to inform the ethics officers. (Kolvenbach Decl. ¶ 15; Kolvenbach Dep. at 35, 38, 42.) Mains testified that plaintiff called him at home, stating "Steve, this whole thing has gotten out of proportion. I wasn't going to turn you in. Aileen did what she had to do because I told her what was going on. I did not turn you in." (Mains Dep. at 33.)

O&R's Ethics Department conducted an investigation and held a meeting with the parties, at which point Mains apologized to Goodwin and received a verbal reprimand. (Def. O&R Rule 56.1 Stmt. ¶¶ 29, 34-36.) Shortly thereafter, Union President Robert Citrolo came to see Mains. Citrolo asked plaintiff's co-worker, Susan Bates, another NFS-placed employee, about her employment status and asked Mains how long Goodwin had been employed by O&R. (Def. O&R Rule 56.1 Stmt. ¶¶ 37-38; Goodwin Dep. at 37.) According to O&R, Citrolo informed O&R's Director of Gas Operations, Richard Cunningham, that plaintiff was performing union work in violation of a collective bargaining agreement.[4] (Def. O&R Rule 56.1 Stmt. ¶¶ 38-39.) One week later, NFS informed plaintiff that her position at O&R was terminated. (*Id.* at ¶ 43; Goodwin Dep. at 38, 39.) Plaintiff then commenced this action following receipt of a right-to-sue letter from the Equal Employment Opportunity Commission.

_____

[4] O&R's permanent, hourly-paid employees are represented by the Union pursuant to a collective bargaining agreement that extends to all employees performing jobs specifically listed in the collective bargaining agreement. (Def. O&R Rule 56.1 Stmt. ¶ 3.)

# DISCUSSION

## I.      Summary Judgment Standard

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986).  A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant.  *See Anderson*, 477 U.S. at 255.  To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).

"In some respects then, summary judgment may be viewed as a 'drastic procedural weapon because its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.'"  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 172 (2d Cir. 2005) (quoting *Garza v. Marine Transp. Lines*, 861 F.2d 23, 26 (2d Cir. 1988) (internal quotation marks omitted)). Accordingly, "the trial court must be especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi*

*v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996)). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## II.    Employer/Employee Requirement Under Title VII

Defendant O&R asserts that plaintiff's claims against it are not viable because in order to maintain an action under Title VII and the NYHRL Goodwin must have had an employer/employee relationship with O&R. O&R asserts that Goodwin did not have the requisite relationship because she was not an employee of O&R, but rather an employee of NFS, an employment agency providing temporary personnel to O&R.

Title VII defines "employer" as a person engaged in an industry affecting commerce, who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b). "The term 'employer' has been construed liberally under Title VII, and does not require a direct employer/employee relationship." *Laurin v. Pokoik*, No. 02 Civ. 1938, 2004 WL 513999, at *4 (S.D.N.Y. Mar. 15, 2004).

"Employee" is defined as an "individual employed by an employer," 42 U.S.C. § 2000e(f), a definition of little help in determining whether an employer/employee relationship exists, *see Fitzgibbons v. Putnam Dental Assoc., P.C.*, 368 F. Supp. 2d 339, 344 (S.D.N.Y. 2005) (Conner, J.). "However, it is well established that when Congress uses the term 'employee' without defining it with precision, courts should presume that Congress had in mind 'the conventional master-servant relationship as understood by the common-law agency doctrine.'" *O'Connor v. Davis*, 126 F.3d 112,

115 (2d Cir. 1997) (quotations and citations omitted). "[I]t is significant that in providing a private right of action against a statutory employer Title VII does not refer to 'employee' but to 'the person aggrieved,' a term that has been construed 'as comprehending individuals who do not stand in a direct employment relationship with an employer.'" *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 611 F. Supp. 344, 347 (S.D.N.Y. 1984), *aff'd without opinion*, 770 F.2d 157 (2d Cir. 1985) (citing *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973)) (footnotes omitted).

The Supreme Court, in *Community for Creative Non-Violence v. Reid*, listed the factors to be examined in determining whether a person qualifies as an "employee" under the common law test:

> [W]e consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is a part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

490 U.S. 730, 751-52 (1989); *see also Houston v. Fidelity (Nat'l Fin. Servs.)*, No. 95 Civ. 7764, 1997 WL 97838, at *12 (S.D.N.Y. Mar. 6, 1997) (citing *Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir. 1996).

The law is clear that plaintiff, although only a temporary employee, nevertheless should be considered an employee of O&R. *See, e.g.*, *Adams v. Debevoise & Plimpton*, No. 03 Civ. 3105, 2004 WL 1737826, at *2 (S.D.N.Y. Aug. 3, 2004) (finding law firm's "continued, long-term relationship" with and control over temporary legal secretary's employment established firm as joint

employer); *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 288 (S.D.N.Y. 1999) (noting that for temporary employees, payment by one party but control by another is the "precise bifurcation that has lead [*sic*] courts to a finding of 'joint employment'"); *Serrano v. 900 5th Ave. Corp.*, 4 F. Supp. 2d 315, 316-17 (S.D.N.Y. 1998) (stating Title VII definition of employer is "'sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether the party may technically be described as an "employer" . . . at common law'" (quoting *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir. 1982), *vacated on other grounds*, 463 U.S. 1223 (1983))); *Amarnare*, 611 F. Supp. at 349 (employing loaned servant doctrine to permit inference that employment relationship existed between company and temporary employee).

The facts clearly indicate that O&R maintained sufficient control over plaintiff to establish an employer/employee relationship, a result that is in line with the above-cited cases. This is so regardless of whether plaintiff was listed on O&R's payroll. O&R determined plaintiff's hours, including her overtime and holiday schedules, signed all plaintiff's time sheets prior to submission to NFS, dictated her assignments, supervised her performance and provided her with all necessary equipment and supplies.[5] (Forman Dep. at 27-30, 40; Goodwin Dep. at 10-12; Mains Dep. at 14-15.) Mains stated that he gave plaintiff assignments, albeit infrequently, but denies ever checking the quality of her work. (Mains Dep. at 51-52.) However, O&R offers no evidence, as it must on summary judgment, that Kolvenbach, plaintiff's other supervisor, also took such a hands-off

---

[5] This Court observes that plaintiff's factual assertions relating to the deposition testimony of Margaret M. Forman, an executive of NFS, are largely mischaracterizations and distortions of her testimony. Nevertheless, there remains sufficient factual basis to find O&R qualifies as plaintiff's employer for the purposes of this action.

approach to Goodwin's performance. To the contrary, the deposition testimony suggests that O&R employees spoke to Goodwin regarding her performance on at least two occasions. (Kolvenbach Dep. at 62, 63; Goodwin Dep. at 34-35.)

The fact that plaintiff was not on the O&R payroll, but instead was paid by NFS, is not dispositive. *See Adams*, 2004 WL 1737826, at *2; *Amarnare*, 611 F. Supp. at 348. Goodwin worked at O&R as a temporary employee for over one year, and was subject to the direction and control of O&R supervisors for the duration of her employment. Nor is O&R's argument that it had no power to fire plaintiff convincing. O&R states it "merely informed NFS that the contract for her position was being cancelled," leaving NFS to fire plaintiff. (Def. O&R Mem. Supp. Summ. J. at 12-13.) This euphemistic construction does not hide the fact that, although acting indirectly, O&R was responsible for terminating plaintiff. Accordingly, O&R is considered plaintiff's "employer" for the purposes of this Title VII action.

The result is the same under the NYHRL. The state law defines an employer as any employer with four or more persons in his employ. *See* N.Y. Exec. L. § 292(5). "In determining whether an entity may be considered an employer within the meaning of the NYHRL, the Court must analyze four elements: 1) whether the proposed employer had the power of selection and engagement of the employee; 2) whether the proposed employer made the payment of salary or wages to the employee; 3) whether the proposed employer had the power of dismissal over the employee; and 4) whether the proposed employer had the power to control the employee's conduct." *Goyette v. DCA Adver., Inc.*, 830 F. Supp. 737, 746 (S.D.N.Y. 1993) (citing *State Div. of Human Rights v. GTE Corp.*, 487 N.Y.S.2d 234 (App. Div. 4th Dep't 1985). The fourth factor is the "most essential factor in this analysis." *Id.* As detailed above, both this crucial fourth factor as well as the third factor are

satisfied.  Thus, O&R is deemed plaintiff's employer in the context of the NYHRL.


### III.    Title VII and NYHRL Claims

Title VII requires employers to provide an atmosphere free of sexual abuse or hostility. *See*

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).  "When the workplace is permeated with

'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment,' Title VII is

violated."  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank*, 477 U.S. at

65, 67) (internal citations omitted); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.

2000).  Section 296(1)(a) of the NYHRL provides the same protection.  N.Y. Exec. L. § 296(1)(a).


### A.    Individual Liability Under Title VII and the NYHRL

Plaintiff has brought suit directly against Mains for violating Title VII.  However, it is well-

settled that "individuals are not subject to liability under Title VII."  *Wrighten v. Glowski*, 232 F.3d

119, 120 (2d Cir. 2000); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (holding

that "individual defendants with supervisory control over a plaintiff may not be held personally liable

under Title VII"), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742

(1998); *accord Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (affirming dismissal

of plaintiff's Title VII claims against defendant in his personal capacity).  Although Mains failed to

raise this issue, to the extent plaintiff seeks to hold Mains liable under Title VII for alleged sexual

harassment and/or creating a hostile work environment, this claim cannot proceed.

Individual liability is permitted under the NYHRL, however.  *See Tomka*, 66 F.3d at 1313;

*see also Gregory v. Daly*, 243 F.3d 687, 689 n.1 (2d Cir. 2001). Thus, plaintiff's NYHRL claim against Mains remains.

### B.     Viability of Claims Against O&R

We also must address defendant O&R's implication that plaintiff's inadequate pleading renders O&R immune to liability for sexual harassment. O&R notes that plaintiff fails to assert a sexual harassment claim against the company—the only charge against O&R is for retaliation—in an apparent attempt to decry liability. (Def. O&R Mem. Supp. Summ. J. at 15, 17.) However, O&R goes on to argue in detail, apparently on behalf of Mains, who has himself filed his own summary judgment motion, why plaintiff's sexual harassment claims fail. (*Id.*)

The fact that the Complaint does not contain a count specifically alleging a claim for sexual harassment against O&R is not fatal because the Complaint alleges the factual detail necessary to support such a claim. *See Cruz*, 202 F.3d at 569 (stating that while the complaint could have presented the claim for hostile work environment harassment "more artfully," the complaint contained "the essential elements of the charge"). Under FED. R. CIV. P. 15(b), a district court may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice. *See* FED. R. CIV. P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings."); *see also Cruz*, 202 F.3d at 569 (citing FED. R. CIV. P. 15(b)). Plaintiff testified that she believed O&R was responsible for the sexual harassment she allegedly suffered. (Goodwin Dep. at 54.) This should have resolved any of O&R's doubts regarding the charges against it. In addition, O&R comprehensively briefed this issue, thus negating any claim of prejudice. *See Boyd v.*

*Presbyterian Hosp.*, 160 F. Supp. 2d 522, 539 n.21 (S.D.N.Y. 2001).

Accordingly, this Court applies plaintiff's claim for sexual harassment and hostile work environment to O&R.

### C.    Sexual Harassment and Hostile Work Environment Claims

#### 1.    The Standard

In order to establish a violation of Title VII under a hostile work environment theory, a plaintiff is required to show: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999) (internal quotation marks and citation omitted).   New York courts require the same standard of proof for claims brought under the NYHRL as those brought pursuant to Title VII, and, therefore, NYHRL claims are analyzed in the same manner as Title VII claims. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).   Therefore, the remaining NYHRL claim against Mains and all claims against O&R will be analyzed together, and our holding with respect to plaintiff's Title VII claims shall apply with equal force to the NYHRL claims. *See*, *e.g.*, *Cruz*, 202 F.3d at 565 n.1.

The victim must not only perceive the environment as hostile, but the environment must be such that a reasonable employee in the person's shoes would perceive it as hostile. *Harris*, 510 U.S. at 21-22; *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997).   Sexual harassment is assessed based on the totality of the circumstances. *See Harris*, 510 U.S. at 23; *Carrero v. N.Y. City Hous. Auth.*,

890 F.2d 569, 577-78 (2d Cir. 1989). The Supreme Court has provided guidance and established a non-exclusive list of factors that should be weighed when considering the totality of circumstances in determining whether a workplace is permeated with discrimination. These factors include: (1) the frequency and severity of the conduct; (2) whether the conduct was physically threatening, humiliating or merely an offensive utterance; (3) whether it unreasonably interferes with the employee's job performance; and (4) the effect on the employee's psychological well-being. *See Harris*, 510 U.S. at 23; *see also Kodengada v. Int'l Bus. Machs. Corp.*, 88 F. Supp. 2d 236, 242 (S.D.N.Y. 2000) (citing *Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999)). Isolated incidents of harassment ordinarily will not support a hostile work environment claim. *See, e.g.*, *Kotcher v. Rosa and Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992). Conduct that can be characterized as a few isolated incidents, teasing, casual comments or sporadic conversation will not be deemed to create a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *Quinn*, 159 F.3d at 768. However, "'even a single episode of harassment, if severe enough, can establish a hostile work environment.'" *Richardson*, 180 F.3d at 437 (quoting *Torres*, 116 F.3d at 631 n.4). Of course, "'[t]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim.'" *Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (quoting *Richardson*, 180 F.3d at 439).

### 2. Genuine Issues of Material Fact Permeate This Action

Defendants argue summary judgment is appropriate because: (1) plaintiff failed to satisfy the elements of a claim of sexual harassment; (2) the conduct was not so severe and pervasive as to

create an abusive working environment; and (3) O&R maintained an effective sexual harassment policy and took "prompt and effective corrective action" upon learning of plaintiff's complaint. (Def. O&R Mem. Supp. Summ. J. at 19-24; Def. Mains Mem. Supp. Summ. J. at 7-10.) Specifically, defendants assert that plaintiff never considered or indicated that the conduct alleged was unwelcome, and that plaintiff herself participated in such behavior. (Def. O&R Mem. Supp. Summ. J. at 19-20; Def. O&R Reply Mem. Supp. Summ. J. at 9-10; Def. Mains Reply Mem. Supp. Summ. J. at 5.) In addition, defendants contend that the alleged incidents of sexual harassment were minor, infrequent and in no means physically intimidating such that the "totality of Plaintiff's allegations fall far short of the level of severe intimidation or pervasive discrimination necessary to demonstrate the existence of a hostile work environment." (Def. O&R Mem. Supp. Summ. J. at 21; Def. Mains Mem. Supp. Summ. J. at 4-7.) Moreover, O&R's "clear, explicit and well-publicized policy against sexual harassment" resulted in an effective investigation and resolution of the matter. (Def. O&R Mem. Supp. Summ. J. at 23.)

Despite the appeal of defendants' arguments, this Court finds that innumerable genuine issues of material fact exist. Contradictory testimony creates a credibility question concerning nearly every fact at issue is this case, which satisfies this Court that summary judgment is inappropriate.[6]

As described in the background section, *see supra*, plaintiff's Complaint and deposition testimony alleges a series of harassing incidents, several of the more severe allegations occurring within the space of two months. Mains admits making the comment regarding oral sex that directly

---

[6] This Court questions the exaggerated manner in which plaintiff's brief characterizes a number of the alleged incidents. This Court also notes the inconsistencies in plaintiff's account of the alleged misconduct. However, it is not the role of this Court to invade the duty of a jury; our role at this stage is to determine if there are genuine issues of material fact. *See Gallo*, 22 F.3d at 1224. We find that there are.

led to Goodwin's complaint to Kolvenbach. In admitting other allegations, Mains disputes either the manner or frequency of the incidents. Several of the allegations he denies outright. The weight a jury gives to Goodwin's and Mains' version of events is central to determining which incidents, if any, occurred, and whether the severe and pervasive standard was satisfied. Such a determination is not the role of this Court. Moreover, defendants' contention that Goodwin's failure to report a number of the alleged incidents places them outside the severe or persuasive context is not persuasive; Goodwin testified—and Kolvenbach confirmed—that she was hoping to land a permanent position at O&R, and was concerned that reporting the incidents of sexual harassment might jeopardize that possibility. (Goodwin Dep. at 31, 33; Kolvenbach Dep. at 36-37, 42-43.)

More importantly, Mains admitted that he felt animosity toward plaintiff when she started working at O&R because "[s]he came into our office and took my job." (Mains Dep. at 34.) Mains also admits referring to temporary employees, including plaintiff, as "rentals" and "tear aways." In addition, Kolvenbach's testimony reveals that plaintiff "continuously complained" about not getting along with Mains. Indeed, plaintiff and Mains admit that their relationship was strained following this incident, though Kolvenbach's later testimony states the pair returned to "business as usual." (Goodwin Dep. at 25-26, 32; Mains Dep. at 73; Kolvenbach Dep. at 47.) This Court is mindful that where intent is at issue in a summary judgment context, "the trial court must be especially cautious in deciding whether to grant this drastic provisional remedy . . . because . . . careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi*, 191 F.3d at 135 (citing *Chertkova*, 92 F.3d at 87).

Genuine issues of material fact also surround plaintiff's own office behavior. Plaintiff testified that she found Mains' actions and behavior appalling, but Kolvenbach's testimony lends

some support to defendant's assertions that plaintiff herself used profane language, made sexually explicit jokes and engaged in sexually explicit behavior; plaintiff understandably disputes this. (Kolvenbach Dep. at 69-70.) However, defendants have offered no evidence that plaintiff was ever spoken to or reprimanded for such behavior. Because this Court must resolve all ambiguities and factual inferences in favor of plaintiff, Kolvenbach's insinuations are insufficient to warrant summary judgment.

In addition, factual issues exist regarding O&R's sexual harassment policy, which it claims was "clear, explicit, and well-publicized." (Def. O&R Mem. Supp. Summ. J. at 3.) Specifically, this policy was explained to each newly hired employee, discussed at new employee orientation, contained in a business ethics handbook and available on the O&R intranet. (Farley Dep. at 17; Farley Decl. ¶ 14; Reilly Decl., Ex. U.) However, O&R goes out of its way to argue that plaintiff was not an O&R employee, and at no point presents evidence, or even a conclusory allegation, that plaintiff ever was made aware of this policy in the same manner as an O&R employee. Moreover, the extent of the policy's effectiveness is questionable given that Mains, an O&R supervisor, denied ever having seen the policy. (Mains Dep. at 61-62.) Thus, the cases O&R cites concerning awards of summary judgment based on an effective sexual harassment policy are distinguishable because here there is a genuine issue of material fact regarding the dissemination of this policy not only to plaintiff, but also to defendant's own personnel.

The existence of numerous genuine issues of material fact convince this Court that summary judgment is inappropriate. Consequently, defendants' motions for summary judgment concerning claims of sexual harassment and hostile work environment are denied.

**D.**     **Retaliation Claims**

Title VII provides that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e-3(a). Retaliatory acts are also unlawful under the NYHRL. *See* N.Y. EXEC. L. § 296(1)(e). Retaliation claims are examined under the burden shifting rules established by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Quinn*, 159 F.3d at 764; *see also Knight v. City of New York*, 303 F. Supp. 2d 485, 495 (S.D.N.Y. 2004) (stating that courts considering retaliation claims brought pursuant to Title VII and the NYHRL utilize the same analytical framework for both the federal and state claims). In the summary judgment context, (1) plaintiff must establish a *prima facie* case of retaliation, (2) defendant then has the burden of pointing to evidence that there was a legitimate, nonretaliatory reason for the complained of action, and (3) if defendant meets its burden, plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation. *See Quinn*, 159 F.3d at 764 n.5; *see also Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

**1.**     **Prima Facie Case**

To establish a prima facie case of retaliation, plaintiff must show (1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision. *See Richardson*, 180 F.3d at 443; *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996).

Defendant O&R makes the conclusory statement that "Plaintiff has failed to make out a *prima facie* case, particularly on the issue of causation." (Def. O&R Mem. Supp. Summ. J. at 15.) We disagree. First, the term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3. There can be no question that plaintiff, who lodged a complaint with O&R that was investigated by O&R's Ethics Department, engaged in a protected activity. *See Cruz*, 202 F.3d at 566 (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Second, O&R's termination of plaintiff satisfies the second requirement for a *prima facie* case because her discharge clearly amounts to an adverse employment action. *See Quinn*, 159 F.3d at 769. Finally, although O&R attempts to discount the brief time gap between Goodwin's complaint to O&R and her termination, this Court finds that because Goodwin's termination came less than one month after her complaint was reported to O&R's Ethics Department, the third requirement for a *prima facie* case is satisfied as well. *See*, *e.g.*, *Jones v. Yonkers Pub. Sch.*, 326 F. Supp. 2d 536, 548-49 (S.D.N.Y. 2004) (Conner, J.) ("Adverse employment action taken approximately one month after the plaintiff engaged in protected conduct is sufficiently close in time to satisfy this causal nexus requirement.") (collecting cases).

### 2. Legitimate, Nonretaliatory Reason for the Adverse Employment Action

O&R contends that in late August or early September 2002, Citrolo complained to Cunningham that Goodwin's position as a locator was a union position under the collective bargaining agreement. (Cunningham Decl. ¶¶ 3-5; Evans Decl., Ex. A at 125.) After consulting with O&R's Labor Relations Director William Kelly, Cunningham determined that Goodwin was in fact

operating in a position properly belonging to a union-represented employee. (Cunningham Decl. ¶¶ 6-7.) According to O&R, Goodwin was terminated from her assignment at O&R in order to comply with the collective bargaining agreement. (Def. O&R Reply Mem. Supp. Summ. J. at 6.)

O&R supports its explanation by declarations from Cunningham and Kelly, copies of the relevant pages of the collective bargaining agreement and pertinent deposition testimony from a variety of individuals. This offer of proof satisfies O&R's burden of articulating a legitimate, nonretaliatory reason for terminating Goodwin.

### 3.    Pretext

Once O&R proffered its legitimate, nondiscriminatory reason for the challenged employment action, "the presumption raised by the prima facie case was rebutted, and drops from the case." *Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999). To defeat O&R's motion for summary judgment, plaintiff must produce evidence which could lead a reasonable jury to disbelieve defendant's proffered reason or infer that the real reason was unlawful discrimination. *See Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328, 343 (S.D.N.Y. 2001) (Conner, J.) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48 (2000)). Accordingly, this Court must determine whether the record contains evidence to support Goodwin's contention that O&R's proffered reason was merely pretext.

"'[T]his does not mean that the evidence that the plaintiff used to establish his prima facie case is wiped out; there is no reason that the plaintiff cannot rely on evidence offered to establish his prima facie case . . . subsequently to rebut the employer's . . . explanation.'" *Id.* (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir. 1998)). Also, "[i]t is well settled that a plaintiff may

'establish pretext and thereby successfully oppose summary judgment, . . . by demonstrat[ing] weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action.'" *Id.* (quoting *Cruse v. G&J USA Publ'g*, 96 F. Supp. 2d 320, 329 (S.D.N.Y. 2000)).

This Court believes that, upon a review of the record, an issue of fact remains on the question of retaliatory discharge. Goodwin has "proffered evidence suggesting a strong temporal correlation between her complaint[] to the Company . . . and her termination." *Quinn*, 159 F.3d at 770. In addition, Citrolo, the Union President who raised the issue with O&R of Goodwin's nonunion status, is an alleged long-time acquaintance of Mains, who appeared at O&R's Locating Department unannounced several days after Mains met with the Ethics Department. There remain inconsistences in the testimony concerning Mains' relationship with Citrolo that must be presented to a jury. Moreover, although O&R submitted Cunningham's declaration in support of its assertion that he had no knowledge of plaintiff's sexual harassment complaint when he requested that NFS terminate Goodwin, the Court finds an issue of fact remains as to whether certain O&R directors did have such knowledge, and in fact may have attended the ethics meeting addressing Goodwin's complaint.

Construing the record most favorably to plaintiff, as the Court must in assessing a motion for summary judgment, we conclude that a reasonable jury could find that the reasons supplied by O&R are pretextual. Accordingly, defendant O&R's motion for summary judgment regarding plaintiff's claims of retaliation is denied.

## CONCLUSION

For all of the foregoing reasons, defendant Steven Mains' motion for summary judgment is

granted in part and denied in part. We grant defendant Mains' motion for summary judgment dismissing plaintiff's Title VII claims against him. We deny defendant Mains' motion for summary judgment dismissing plaintiff's New York Human Rights Law claims. Defendant Orange & Rockland Utilities, Inc.'s motion for summary judgment is denied in full.


SO ORDERED.

Dated: White Plains, New York
        October 14, 2005


_William C. Conner_
Sr. United States District Judge